# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**NELSON RIVAS ALVAREZ,**

        **Plaintiff,**

**v.**                                       **Civil Action No. 1:10cv175**

**UNITED STATES DEPARTMENT OF
TREASURY, INTERNAL REVENUE SERVICE,**

        **Defendants.**

## REPORT AND RECOMMENDATION/OPINION
## REGARDING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

On October 14, 2010, Plaintiff, Nelson Rivas Alvarez, filed a Complaint under the Freedom of Information Act and Privacy Act [D.E. 1]. The case was referred to the undersigned United States Magistrate Judge by Order of United States District Judge Irene M. Keeley on February 10, 2011 [D.E. 9]. On January 13, 2012, the defendants filed a Motion to Dismiss or for Summary Judgment [D.E.24]. Because the plaintiff is proceeding *pro se,* the Court entered a Roseboro Notice on January 18, 2012, giving Plaintiff thirty days to file any opposition to Defendant's motion [D.E. 26]. On February 6, 2012, Plaintiff filed a "Request for Interrogatories" [D.E. 29]. On February 28, 2012, Defendants filed a Response in Opposition to the "Request for Interrogatories" [D.E. 30].

On March 20, 2012, the Court entered an Order denying Plaintiff's "Request for Interrogatories" but granting his motion for a thirty-day extension of time to file his Response to Defendants' Motion to Dismiss or for Summary Judgment [D.E. 24]. Plaintiff filed his "Objection 2nd [sic] Opposition to the Defendant's Summary Judgement 2nd [sic] Motion to Dismiss Proceeding's" [sic] on April 19, 2012 [D.E. 33].

## I. The Complaint

In his Complaint, Plaintiff alleges the following:

A.   By means of a letter sent to the defendants, US Treasury/IRS which was received by the defendants on January 14, 2009,[1] the plaintiff requested under "FOIA" the release of the record for commercial user upon a Comprehensive Annual Financial Report ("CAFR") from 2007-2008.

B.   On March 30, 2009, Defendants denied the FOIA request because of failure to meet FOIA requirements for establishing plaintiff's identity.

C.   On April 6, 2009, Plaintiff appealed the denial of his January 2009 request.

E.   On May 5, 2009, Plaintiff's appeal was rejected and he was instructed to correct the infirmities in his FOIA request and to submit a proper request.

F.   On May 18, 2009, Plaintiff re-submitted his FOIA/Privacy Act request.

G.   On June 23, 2009, Plaintiff requested for the second time his records.

H.   On June 29, 2009, Plaintiff's request was denied.

I.   On July 13, 2009, Plaintiff re-submitted the appeal.

J.   On August 17, 2009, Plaintiff again submitted supplemental information in support of his request for expedited processing.

K.   On May 12, 2010, Plaintiff requested the Comprehensive Annual Financial Report (CAFR) from October 1991 to December 1992, and from December 30, 2002, to December 2004.

L.   The May 12, 2010, letter requested:

1.   Individual Master File transcripts complete with 6209 decoding book.

2.   Form 5546 activity codes.

3.   Form 668W Notice of Levy Service and Treasury Department authorization.

_____

[1]The request was actually dated January 14, 2009, not received on that date.

4.      Form 2039 summons.

M.      On June 9, 2010, Plaintiff submitted  FOIA appeals for expedited processing.

N.      On June 17, 2010, Plaintiff requested CAFR from December 1 to 30, 1992, and from December

1 to 30, 2004.  The requests included:

1.       Individual Master File transcripts complete with 6209 decoding book.

2.      Form 5546 activity codes.

3.      Form 668W Notice of Levy Service and Treasury Department authorization.

4.      Form 2039 summons.

O.      On June 30, 2010, Defendant responded by letter to Plaintiff that the agency was unable to locate

any responsive records or documents pertaining to Plaintiff's Social Security Number and

Plaintiff's FOIA requests.

P.      On July 23, 2010, Defendants directed Plaintiff to provide additional information.

Q.      On August 3, 2010, Plaintiff responded to Defendants' instruction to provide additional

information.

## II.  Motion to Dismiss or for Summary Judgment

In their Motion, Defendants represent as follows:

A.      Plaintiff's first request is dated January 14, 2009.

B.      On March 30, 2009, the IRS informed Plaintiff his request did not satisfy FOIA requirements

for establishment of his identity.  The IRS further advised Plaintiff: "I found no documents

responsive to your request for a copy of your IMF file.  I am unable to identify the document

you refer to as a Comprehensive Annual Financial Report.  Please provide us with more

specificity so we may do the appropriate search for responsive records."

C.     On April 6, 2009, Plaintiff appealed the denial of the January 14, 2009 request.

D.     On May 5, 2009, Defendants advised Plaintiff that FOIA and pertinent regulations require that certain information must be included in order for a request to be treated as a proper FOIA request. "A determination by the disclosure office that a request is deficient in any respect is not a denial of access. Therefore, under Departmental regulations, you are not entitled to administratively appeal this response."

E.     Plaintiff filed a "second" request on May 18, 2009, requesting 17 items pertaining to himself for tax years 1991 and 1992, and from the time period December 1, 2008 through the present.

F.     The IRS reported on June 29, 2009, that it "found no documents specifically responsive to your request."

G.     Plaintiff filed a "third" request on June 23, 2009, requesting the following information for 1992-1993: Individual Master File transcripts and decoding books, Auditing Information Management Systems, individual microfilm retention register, Form 5546, and the excise codes assigned to Plaintiff, Form 668, and Form 2039. This request did not include a Social Security number.

H.     On August 7, 2009, the IRS advised Plaintiff that it could not process the request until he established his identity and provided his Social Security Number.

I.     On August 17, 2009, Plaintiff filed his "fourth" request, setting forth his social security number and a post office box address in Bruceton Mills, West Virginia. The IRS considered Plaintiff's "third" June 23, 2009, request "perfected."

J.     The IRS performed a search under the Integrated Data Retrieval System ("IDRS") for Plaintiff's Social Security Number. No accounts matching his Social Security Number were

identified in the Individual Master File.

K.     On May 12, 2010, Plaintiff filed his "fifth" request, requesting documents pertaining to criminal matters, including arrest records, investigation reports, and evidentiary and scientific information findings. He also requested IMF transcripts, Form 5546 activity codes, Form 668W and Form 2039.

L.     The IRS informed Plaintiff on June 9, 2010, that his request could not be processed because his request was imperfect under the FOIA, as not containing an agreement to pay for search and copying fees, and not describing in sufficient detail the records sought to enable it to conduct a search for responsive records. The IRS requested Plaintiff describe the records in sufficient detail to enable the IRS to search for the documents.

M.     On June 9, 2010, Plaintiff filed his "sixth" request, stating he was appealing the denial of his request.

N.     On July 15, 2010, the IRS informed Plaintiff that it had responded to his August request on September 18, 2009.

O.     On June 17, 2010, Plaintiff filed his "seventh" request, following up his May 12, 2010 request. He requested the CAFR from December 1 through 30 of 1992 and December 1 through 30 of 1994; the IMF transcripts and decoding book; Form 5546 activity codes; Form 668W; Form 2039; unspecified documents in the Business Master File; and a certification of all documents pertaining to Plaintiff's social security number.

P.     On June 30, 2010, the IRS responded that the request was imperfect because it did not describe records in sufficient detail to enable it to perform a search for responsive records. Nevertheless, a search was performed in the IDRS for Plaintiff's Social Security Number. The

IRS informed Plaintiff that no accounts matching his social security number were located.

Q.     On July 9, 2010, Plaintiff filed his "eighth" request, attaching a copy of a Social Security card containing his name and SSN. The request states: "I don't know what happened with the SS# that had been assigned to me. The S.S. card has the number. But in the FBI record I just find [sic] out another S.S. number. Mr. Murillo I be incarcerate [sic] and don't have access to the website . . . . Can you please check one more time under the new SS#?"

R.     On July 23, 2010, the IRS responded that Plaintiff's request was imperfect because he did not agree to pay for search and copying fees, and because he did not establish his identity, as required under the FOIA. He was informed that he would need to establish his identity and agree to pay fees before his FOIA request could be processed.

S.     On August 3, 2010, Plaintiff filed his "ninth" request. Plaintiff was advised the request was still imperfect because he had failed to establish his identity.

## III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing

the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

In a FOIA action, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced, [is identifiable], or is exempt from the Acts inspection requirements." Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (internal quotations omitted). However, the agency must conduct a reasonable search for responsive records and must establish that it has "made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested." Oglesby v. United States Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory and submitted in good faith." Miller v. United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985); Wickwire Gavin P.C. v. Defense Intelligence Agency, 330 F.Supp.2d 592 (E.D. Va. 2004).

## IV. Analysis

The purpose of the Freedom of Information Act, 5 U.S.C. § 552, "is to encourage public disclosure of information so citizens may understand what their government is doing." Office of the Capital Collateral Counsel v. Dept. of Justice, 331 F.3d 799, 802 (11th Cir. 2003). FOIA requires government agencies to disclose to the public any requested document unless the agency proves that the document falls within one of nine statutory exemptions. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975). Because the purpose of the FOIA is to encourage disclosure, its disclosure requirements are construed broadly, its exemptions are construed narrowly, and the government bears the burden of proving a requested document is exempt. Dept. of Air Force v. Rose, 425 U.S. 352, 366 (1976). While the FOIA allows an agency to withhold information within one of the exemptions, it does not limit the agency's discretion to disclose such exempt information if it sees fit. Chrysler Corp. v. Brown, 441 U.S. 281, 293-294 (1979).

The Privacy Act also comes into play in this case. The Privacy Act provides in pertinent part that "[n]o agency shall disclose any record which is contained in a system of records . . . except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains, unless disclosure of the record would be . . . (2) required under section 552 of the title [FOIA]." 5 U.S.C. § 552a(b)(2). "The Privacy Act was passed in 1974 to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government and to outside individuals." Cochran v. United States, 770 F.2d 949, 954 (11th Cir. 1985). The Privacy Act was enacted in large part in response to concern over the impact of computer data banks on individual privacy. United States Dept. of Justice v. Reporters

Comm. for Freedom of the Press, 489 U.S. 749, 766 (1989).

While the Privacy Act and the FOIA have contradictory purposes, the relationship between the two statutes is well-established: "the Privacy Act expressly defers to the mandatory disclosure requirements of the FOIA by prohibiting the nonconsensual release of personal information unless the information is required to be disclosed under the FOIA. The net effect [of § 552a(b)(2)] is to permit disclosure where the FOIA requires it, but to prohibit disclosure where the FOIA allows the agency to refuse disclosure." Cochran, 770 F.2d at 954-955 (internal citation and quotation omitted).

FOIA requires federal agencies to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions. In this case there is no issue of records being withheld pursuant to an exemption. Defendants did not withhold any records based on exemptions. Defendants' arguments regarding Plaintiff's requests fall into two categories: 1) those requests which were not perfected, and 2) those requests that were perfected but no responsive documents were found.

## A. Failure to Exhaust Administrative Remedies

Pursuant to 5 U.S.C. section 552(a)(3)(A)(ii), agencies are required to make records available upon a request that (I) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed. The IRS rules governing FOIA requests are found at 26 C.F.R. section 601.702, which provides, in pertinent part:

> (c)(I) Subject to the application of the exemptions described in 5 U.S.C. 522(b) and the exclusions described in 5 U.S.C. 522(c), the IRS shall, in conformance with 5 U.S.C. 552(a)(3), make reasonably described records available to a person making a request for such records which conforms in every respect with the rules and procedures set forth in this section. Any request or any appeal from the initial denial for a request that does not comply with the requirements set forth in this section shall not be considered subject to the time constraints of paragraph (c)(9), (10), and (11) of this section, unless and until the request or appeal is amended to comply. The IRS shall promptly advise the requester in what respect the request or appeal is deficient so that it may be

resubmitted or amended for consideration in accordance with this section. If a requester does not resubmit a perfected request or appeal within 35 days from the date of a communication from the IRS, the request or appeal file shall be closed. When the resubmitted request or appeal conforms with the requirements of his section, the time constraints of paragraphs (c)(9), (10), and (11) of this section shall begin.

. . . .

(4)(I) Requesters are advised that <u>only requests for records which fully comply</u> with the requirements of this section can be processed in accordance with this section. Requesters shall be notified promptly in writing of any requirements which have not been met or any additional requirements to be met . . . .

The initial request for records must - -

(A) Be made in writing and signed by the individual making the request;

(B) State that it is made pursuant to the Freedom of Information Act, 5 U.S.C. 552, or regulations thereunder;

(C) Be addressed to and mailed to the office of the IRS official who is responsible for the control of the records requested . . . .

(D) Reasonably describe the records in accordance with paragraph (c)(5)(I) of his section;

(E) In the case of a request for records the disclosure of which is limited by statute or regulations (as, for example, the Privacy Act of 1974 (5 U.S.C. 552a) or section 6103 and the regulations thereunder), <u>establish the identity and the right of the person making the request</u> to the disclosure of the records in accordance with paragraph (c)(5)(iii) of this section;

(F) Set forth the address where the person making the request desires to be notified of the determination as to whether the request shall be granted;

(G) State whether the requester wishers to inspect the records or desires to have a copy made and furnished without first inspecting them;

(H) State the firm agreement of the requester to pay the fees for search, duplication, and review ultimately determined in accordance with paragraph (f) of this section, or, in accordance with paragraph (c)(4)(ii) of this section, place an upper limit for such fees that the requester is willing to pay, or request that such fees be reduced or waived and state the justification for such request; and

(I) Identify the category of the requester and, with the exception of "other requesters," state how the records shall be used, as required by paragraph (f)(3) of hits section.
. . . .

The request for records must describe the records in reasonably sufficient detail to enable the IRS employees who are familiar with the subject matter of the request to locate the records without placing an unreasonable burden upon the IRS. While no specific formula for a reasonable description of a record can be established, the requirement shall generally be satisfied when the requester gives the name, taxpayer identification number (*e.g.*, social security number or employer identification number), subject matter, location, and years at issue, of the requested records. . . . .

In the case of records containing information with respect to particular persons the disclosure of which is limited by statute or regulations, persons making requests shall establish their identity and right to access to such records. Persons requesting access to such records which pertain to themselves may establish their identity by - -
. . . .

(2) The submission of the requester's signature, address, and one other identifier (such as a photocopy of a driver's license) bearing the requester's signature, in the case of a request by mail, or

(3) The presentation in person or the submission by mail of a notarized statement, or a statement made under penalty of perjury in accordance with 28 U.S.C. 1746, swearing to or affirming such person's identity.

(Emphasis added).

Defendants first argue that, pursuant to the above rules, Plaintiff failed to perfect his first (January 18, 2009), third (June 23, 2009), eighth (July 9, 2010), and ninth (August 3, 2010) requests because he failed to establish his identity. He also failed to perfect his fifth (May 12, 2010) and eighth (July 9, 2010) requests because he failed to state the firm agreement to pay the fees for search, copying, and duplication as required by the regulations. Plaintiff also failed to perfect his fifth (May 12, 2010) and seventh (June 17, 2010) requests because they did not "reasonably describe" the records sought.

Defendants further argue that, pursuant to the Privacy Act, Plaintiff failed to perfect his first,

third, eighth, and ninth requests because they failed to establish his identity in accordance with 31

C.F.R. Subtitle A, Part 1, Subpart C, Section 3(h), Appendix B (2010), which provides:

> (ii) An individual seeking notification or access to records by mail, or seeking to amend a record by mail, may establish identity by a signature, address, <u>and one other identifier such as a photocopy of a driver's license or other document bearing the individual's signature</u>.

> (Iii). Notwithstanding subdivision[] . . . (ii) of this subparagraph, an individual seeking notification or access to records by mail or in person, or seeking to amend a record by mail or in person, who so desires, may establish identity by <u>providing a notarized statement</u>, swearing or affirming to such individual's identity and to the fact that the individual understands the penalties provided in 5 U.S.C. section 552a(i)(3) for requesting aor obtaining access to records under false pretenses.

(Emphasis added).

Defendants argue that Plaintiff also failed to perfect his first and seventh requests by not properly identifying a system of records containing the requested documents as required by the Service's Privacy Act regulations.

A review of the documents shows Plaintiff did fail to establish his identity in the January 14, 2009, and January 18, 2009 requests. His appeal of that decision on April 6, 2009, was unavailing, because Plaintiff still did not establish his identity, pursuant to the rules. Plaintiff's June 23, 2009, request does not contain a Social Security number. Plaintiff's May 2010, request was for different records, and was imperfect because he did not agree to pay for search and copying fees, and the criminal records sought were not described in sufficient detail to enable a search for responsible records. Plaintiff's July 2010 request attached a copy of his social security card containing his name and social security number. Still, Plaintiff stated: 'I don't know what happened with the SS# that had been assigned to me . . . . But in the FBI record I just find out another S.S. Number . . . .Mr. Murlillo I be incarcerate [sic] and I don't have access to the website . . . Can you please check one more time

under the new SS#?" This request was imperfect because Plaintiff failed to establish his identity, for either Social Security Number, and failed to agree to pay fees. His August 2010 request is still imperfect as Plaintiff still failed to establish his identity.

Further, upon a review of the record, the undersigned also agrees with Defendants that Plaintiff failed to perfect his January 2009, June 2009, July 2010, and August 2010, requests because he failed to establish his identity in accordance with the Privacy Act.

Upon consideration of all of the above, the undersigned finds Plaintiff failed to exhaust his administrative remedies as to the requests deemed not perfected due to his failure to perfect the requests listed above. The parties have not cited, and the undersigned has not located, a Fourth Circuit case holding that the failure to exhaust administrative remedies in a FOIA case either does or does not strip this Court of jurisdiction. Other courts which have addressed the issue have held that exhaustion is not a jurisdictional requirement. See, e.g., Hull v. IRS, 656 F.3d 1174 (10th Cir. 2011)("we seize this opportunity for clarity by joining a majority of our sister circuits in concluding exhaustion under FOIA is a prudential consideration rather than a jurisdictional prerequisite."). The 10th Circuit's conclusion, however, does not "alter the fact that exhaustion remains a hurdle that FOIA plaintiffs must clear in order to obtain relief through the courts." Id. at 1183 (Emphasis added).

The undersigned therefore does not address Plaintiff's unexhausted requests.

**B.      Perfected requests**

A review of the record indicates, and Defendants agree, that Plaintiff did perfect his May 18, 2009, request. His August 2009 request perfected the June 2009 request. On June 30, 2010, the IRS responded that the request was imperfect because it did not describe records in sufficient detail to enable it to perform a search for responsive records. Nevertheless, a search was performed for

Plaintiff's Social Security Number. Although Plaintiff's claim that the IRS' procedure was inefficient and costly may have merit, the undersigned finds the fact that the IRS eventually found the requests were perfected and therefore performed a search for records moots the issue of the unexhausted requests for the same information.

Pursuant to each of the above perfected requests, the IRS informed Plaintiff that no accounts matching his social security number were located, and no records were disclosed because they did not exist. The issue in this matter is therefore the reasonableness of the search itself. An agency is under a duty to conduct a reasonable search for responsive records when presented with a FOIA request. Oglesby v. Department of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Although an agency is under a duty to conduct a reasonable search, Oglesby, supra, reasonableness is measured by the method of the search, not its results. Cleary, Gottlieb, Steen & Hamilton v. HHS, 844 F.Supp. 770, 777, n. 4 (D.D.C. 1993). Therefore, a search is not unreasonable simply because it produces no results. Id. The agency is not required to search every system of records, but only those systems in which responsive documents are likely to be located. Oglesby, 920 F.2d at 68. The adequacy of the search depends on the circumstances of the case, see Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990), and the FOIA does not require an agency to prove that all responsive documents have been located. Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). In other words, the search "need only be reasonable; it does not have to be exhaustive." Miller v. Dept. of State, 779 F.2d at 1383.

To establish that it has made a good faith effort to obtain the requested information, the agency must provide affidavits or declarations of the responsible agency officials. Id. Those affidavits must establish that the agency conducted its search using methods which can reasonably be expected to

produce the information requested.  Oglesby, 920 F.2d at 68.  The search must have been made in good

faith and the agency has the burden of demonstrating the adequacy of its search.  Id.  The affidavits

or declarations submitted by an agency to support the adequacy of its search are accorded their own

presumption of good faith.  Carney v. DOJ, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S.

823 (1984).  In examining the adequacy of the search, the question is not whether any other responsive

documents exist, but only whether the search conducted was adequate.  Steinberg v. DOJ, 23 F.3d 548,

551 (D.C. Cir. 1993).

In Heily v. U.S. Dept. Of Commerce, 69 Fed. Appx. 171 (4th Cir. 2003)(unpublished)[2] the Fourth

Circuit stated:

> A defendant agency has the burden of establishing the adequacy of its search and that any
> identifiable document has either been produced or is subject to withholding under an
> exemption.  *See Carney v. United States Dep't of Justice*,  19 F.3d 807, 812  (2nd Cir.
> 1994).  This burden may be met through affidavits explaining the manner in which the
> search was conducted.  *See id.*  An agency's affidavits must be relatively detailed and
> nonconclusory in order to support a FOIA exemption.  *See Simmons v. United States
> Dep't of Justice*, 796 F.2d 708 (4th Cir. 1986); *see also National Parks & Conservation
> Ass'n v. Kleppe*, 547 F.2d 673, 680 (D.C. Cir. 1976)(holding that conclusory and
> generalized allegations are unacceptable as means of sustaining the burden of
> nondisclosure.).  The court is entitled to accept the credibility of such affidavits, so long
> as it has no reasons to question the good faith of the agency.  *See Bowers v. United States
> Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991); *see also Carney*, 19 F.3d at 812
> (holding that such affidavits are accorded a presumption of good faith).  To prevail over
> this presumption, a requestor must demonstrate a material issue by producing evidence,
> through affidavits or other appropriate means, contradicting the adequacy of the search
> or suggesting bad faith.  *See Miller v. United states Dep't of State*, 779 F.2d 1378, 1384
> (8th Cir. 1985).  When deciding whether these burdens have been met, the district court
> must consider everything in the light most favorable to the nonmoving party.

Here, the IRS provided the declarations of Emily Lesniak, Anne Jensen, Donna Deweese,

---

[2]Pursuant to CTA4 Rule 36(c), the Court has attached to this Order a copy of the opinion
in Heily.

Thomas M. Batch, Jeanne Willis, Jesus Murillo, and Marcia Browning. The Jensen, Batch, Willis, and Murillo declarations all relate to requests for which searches were performed.

The Jensen Declaration states that she is a Senior Disclosure Specialist, within the Privacy, Governmental Liaison and Disclosure Division of the IRS. She has been employed by the IRS since 1983, and by the Disclosure Division since 1998. Her duties include responding to requests under FOIA. She was assigned to respond to Plaintiff's January 18, 2009, request. Although she determined that the request was imperfect, she performed a search in the Integrated Data Retrieval System ("IDRS") for Plaintiff's Social Security number. Ms. Jensen further states:

> IDRS is the Service's primary resource for researching current taxpayer account information. IDRS contains information pertaining to returns filed by taxpayers and information submitted with respect to taxpayers by third parties (such as Forms W-2 filed by employers, Forms 1099 filed by financial institutions, etc.). An individual taxpayer's account is retrieved by entering certain search terms, such as the taxpayer's last name, the TIN (SSN or employer identification number), or other information concerning the type of return file or required to be filed. Once a taxpayer's account has been retrieved on IDRS, the location of tax returns and other paper documents can be determined . . . .

> No accounts matching Plaintiff's social security number were identified. Therefore, no records exist matching Plaintiff's social security number.

The Batch Declaration states that he is a Senior Disclosure Specialist in the Privacy, Governmental Liaison and Disclosure division of the IRS. He has been employed with the IRS for 24 years. His duties include responding to FOIA requests. Those duties require knowledge and understanding of the provisions of FOIA. As part of his duties, he was assigned to respond to Plaintiff's May 18, 2009, request. He performed a search in the IDRS for Plaintiff's Social Security Number. Mr. Batch goes on to describe the IDRS as did Ms. Jensen. He then states: "No accounts matching Plaintiff's social security number were identified on the IRS Master File or Non-Master File.

Therefore, no records exist matching Plaintiff's social security number." He further stated that because the only address provided by Plaintiff was "Bruceton Mills, West Virginia," his prison address, he could not further research the request using an address as a search term.

The Willis Declaration states that she is a Disclosure Specialist within the Privacy Governmental Liaison and Disclosure Division of the IRS. She has been so employed since 2006, and with the IRS since 1985. Her duties include responding to requests under the FOIA. Those duties require knowledge and understanding of the provisions of the FOIA. As part of her duties she was assigned to respond to three of Plaintiff's FOIA requests. Regarding his June 23, 2009, request, she was unable to perform a search in the IDRS because Plaintiff did not include his social security number and the address provided was not unique, as it was for a penitentiary. Ms. Willis describes the IDRS and its function, as did Ms. Jensen and Mr. Batch.

Ms. Willis also examined Plaintiff's August 17, 2009 request, and determined it perfected his June 23, 2009 request. She was assigned to respond to that request. On September 14, 2009, she performed a search in the IDRS for Plaintiff's Social Security Number. No accounts matching Plaintiff's Social Security Number were identified on the Individual Master File. She then requested a search be performed to identify any Non-Master File accounts, and was informed there were also no Non-Master file accounts for Plaintiff's Social Security Number.

The Murillo Declaration states that he is a Disclosure Specialist within the Privacy, Governmental Liaison and Disclosure division of the IRS. He has been so employed since 2004, and employed by the IRS since November 1985. His duties include responding to FOIA requests. Those duties require knowledge and understanding of the provisions of the FOIA. As part of his duties, he was assigned to respond to two of Plaintiff's FOIA requests. He determined that Plaintiff's May 12,

2010 request was imperfect, and so informed Plaintiff. Plaintiff then made another FOIA request dated June 17, 2010. Mr. Murillo determined that request was still imperfect. Nevertheless, he performed a search in the IDRS for Plaintiff's Social Security Number. Mr. Murillo described the IDRS and its function, as had the other Disclosure Specialists. No accounts matching Plaintiff's Social Security number were identified. Mr. Murillo then wrote to Plaintiff, informing him that no documents responsive to his request were found.

The declarations provided by Defendants were made by responsible officials, the individuals who actually conducted the search and were responsible for the decisions. The declarations of Jensen, Batch, Murillo, and Willis also clearly set forth the methods and records system used by the IRS to conduct a FOIA search. In particular, the IDRS database is the system typically used to locate a taxpayer's accounts. In this case, four separate officials were unable to find any records containing Plaintiff's Social Security Number, and were unable to search utilizing his only address provided, that of the prison where he was housed, that being a non-unique address.

The Court is entitled to accept the credibility of such affidavits, so long as it has no reasons to question the good faith of the agency. *See Bowers v. United States Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991). The Court here has no reason to question the good faith of the IRS Disclosure Specialists' affidavits.

In his request for discovery, Defendant attached his own records, showing that an individual with the social security number he submitted in his FOIA requests, received dividends from CMS Energy Corp. in 2002 and 2009, received proceeds from a sale from CMS Energy in 2009, invested in stocks with CMS in 2003, 2006, and 2007, owned and earned dividends on shares with CMS from 2001 through 2009, received dividends from ExxonMobil in 2002 and 2004, and sold shares in ExxonMobil

in 2009. Notably, these records indicate no taxes were ever withheld. Plaintiff mistakenly stated that several of the documents were "from the United States Treasury with the company and the plaintiff's SOCIAL SECURITY NUMBER on them," and asks Defendants to "explain how their [sic] are no 'RECORDS' of the Plaintiff if the Treasury issued the documents [sic] in Exhibit A." The Court explained in its denial of discovery that the documents to which he refers are IRS forms issued in blank, but are not completed by the IRS or Department of the Treasury. Instead, they are filled out and issued by a company (just as a W-2 is an IRS form, but is not, in it's completed form, "issued" by the IRS, but by the employer).

Defendant takes issue with the Court's explanation, stating:

What the Court fail's [sic] to acknowledge is the forms submitted in "Exhibit A" were in fact issued by the Defendants to employer's [sic] and Companies/Financial Institutions to be filled out by Employee's/Customer's and returned to the Defendants for processing.

Plaintiff attaches copies of 2002 and 2009 1099-DIV's, showing dividends of $37.86 and $31.69, respectively, and with no federal income taxes withheld. He also attaches a 2009 1099-B, showing a sale of 102 shares of ExxonMobil for a net gain of $7,063.48. Again the Court explains that none of these forms, as completed, is "issued" by the IRS. Instead they are blank forms which can be ordered in quantities up to 1,000, from the IRS. The payer (employer or financial institution, etc.)fills out the form and sends it to the individual who was paid. Plaintiff correctly asserts the form states: "This is important tax information and is being furnished to the Internal Revenue Service." Again, however, none of the information on the forms comes from the IRS or any branch of the Government. The companies are not branches of the government. Significantly, in every case, no taxes were withheld by the companies.

Plaintiff has also attached a letter from Barbara Beckett, Customer Service Specialist, Division of Customer Assistance, for Treasury Retail Securities, a subsidiary of the Bureau of the Public Debt

Office of Retail Securities. The letter is addressed to Plaintiff and refers to his "inquiry concerning United States Savings Bonds." A search for series E/EE and I bonds from 1974 through 2009 was performed using in part Plaintiff's social security number. According to Plaintiff's attachment, one bond was located, a $500.00 savings bond issued to Nelson Rivas in November 2003.

Plaintiff argues:

It is very clear that Nelson Rivas has shown contradictions in the adequacy of the Defendants search by way of numerous documents/exhibits mainly the United States Saving Bonds issued by the United States Department of the Treasury and regulated by the Defendant's [sic].

(Plaintiff's response at 4). The problem with Plaintiff's argument concerning the bonds is that they are maintained by the Bureau of the Public Debt, as indicated by the website for Treasury Direct, as well as the return address for the response to Plaintiff's inquiry about the bonds. See Plaintiff's Exhibits. As already discussed, a FOIA request must be addressed to the agency that has possession and control of the records. In this case Plaintiff's perfected requests were all made to the IRS. There is no evidence before the Court that any of the requests were made to the Bureau of the Public Debt. Further, none of the requests to the IRS requested records of savings bonds. If they had, the IRS would be required to transfer that request to the appropriate agency. See Treasury Regulation section 601.702(c)(3).

The fact that TreasuryDirect, a subsidiary of the Bureau of Public Debt, was able to locate a savings bond in Plaintiff's name and with his Social Security Number is not evidence that the IRS should likewise have found the information Plaintiff requested of the IRS.

The Court finds Plaintiff has not produced evidence contradicting the adequacy of the search or suggesting bad faith. "Furthermore, the search need not turn up every existing potentially responsive or relevant document. Meeropol v. Meese, 790 F.2d 942 (D.C.Cir. 1986). "The issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but whether the

search for those documents was adequate." Weisberg v. U.S. Dept. Of Justice, 745 F.2d 1476 (C.A.D.C. 1984).

The undersigned believes that the methods utilized by the IRS disclosure specialists can reasonably be expected to produce the information plaintiff requested, and that the agency acted in good faith in conducting its search. Therefore, although Plaintiff believes that the IRS has additional materials responsive to his request, the undersigned believes that the IRS' multiple searches were reasonable and adequate and that the Defendants are entitled to summary judgment as to this claim.

Having recommended the matter be dismissed through Summary Judgment, the undersigned does not address the issues in Defendants' alternative Motion to Dismiss.

## RECOMMENDATION

For all the above reasons, the undersigned United States Magistrate Judge respectfully **RECOMMENDS** Defendants' "Motion to Dismiss or for Summary Judgment" [D.E. 24] be **GRANTED** by granting the Motion for Summary Judgment, and that this matter be **DISMISSED** and stricken from the Court's docket.

Any party may, within fourteen (14) calendar days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474

U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel and by Certified Mail, Return Receipt Requested, to Plaintiff *pro se.*

Respectfully submitted this 26th day of April, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE



69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.)))

**C**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.   See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,

Fourth Circuit.
Daniel E. HEILY, Plaintiff-Appellant,
v.
UNITED STATES DEPARTMENT OF COMMERCE,
Defendant-Appellee,
and
Johnnie Frazier, Inspector General; Hector Benitez; Donald Evans, as an individual and Secretary of Commerce; Brenda Dolan, Departmental Freedom of Information Officer; Barbara S. Fredericks, Assistant General Counsel for Administration; Brian Digiacomo; Azalea Nunnally, Office of Inspector General, Defendants.
No. 03-1309.

Submitted June 12, 2003.
Decided July 3, 2003.

Requester brought action against Department of Commerce (DOC) challenging its withholding of certain documents pursuant to his request under Freedom of Information Act (FOIA). The United States District Court for the Eastern District of Virginia, Gerald Bruce Lee, J., granted DOC's summary judgment motion, and requester appealed. The Court of Appeals held that: (1) affidavit from the Departmental Freedom of Information Officer, listing the documents sought by requester, a description of search conducted by DOC, documents released to requester, and extensive explanation of reasons some documents were withheld, was adequate to meet DOC's burden of showing

that it performed an adequate search and that any identifiable document was either produced or was subject to withholding under FOIA exemption; (2) requester failed to show that DOC "paralyzed" discovery; and (3) federal district court's protective orders preventing depositions of three DOC employees were appropriate.

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A** 🗝 **2509.8**

170A Federal Civil Procedure

   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2509.8 k. Records, Disclosure, and Privacy, Cases Involving. Most Cited Cases
   Affidavit from the Departmental Freedom of Information Officer, listing the documents sought by Freedom of Information Act (FOIA) requester, a description of search conducted by Department of Commerce (DOC), documents released to requester, and extensive explanation of reasons some documents were withheld, was adequate to meet DOC's burden of showing that it performed an adequate search and that any identifiable document was either produced or was subject to withholding under FOIA exemption; thus, DOC's motion for summary judgment was properly granted as to requester's FOIA requests. 5 U.S.C.A. § 552.

**[2] Federal Civil Procedure 170A** 🗝 **2509.8**

170A Federal Civil Procedure

   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.)))

170Ak2509.8 k. Records, Disclosure, and Privacy, Cases Involving. Most Cited Cases

Freedom of Information Act (FOIA) requester's belief, standing alone, that there were other documents from Department of Commerce (DOC) to which he was entitled was inadequate to withstand DOC's summary judgment motion. 5 U.S.C.A. § 552; Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ☞ **1264**

170A Federal Civil Procedure

　170AX Depositions and Discovery
　　170AX(A) In General
　　　170Ak1264 k. Actions in Which Remedy Is Available. Most Cited Cases
**Federal Civil Procedure 170A** ☞ **1272.1**

170A Federal Civil Procedure

　170AX Depositions and Discovery
　　170AX(A) In General
　　　170Ak1272 Scope
　　　　170Ak1272.1 k. In General. Most Cited Cases
Discovery may be greatly restricted in Freedom of Information Act (FOIA) cases; when courts have permitted discovery in FOIA cases, it generally is limited to scope of agency's search and its indexing and classification procedures. 5 U.S.C.A. § 552.

**[4] Records 326** ☞ **62**

326 Records

　326II Public Access
　　326II(B) General Statutory Disclosure Requirements
　　　326k61 Proceedings for Disclosure
　　　　326k62 k. In General; Request and Compliance. Most Cited Cases
Freedom of Information Act (FOIA) requester failed to

prove his allegation that Department of Commerce (DOC) "paralyzed" discovery, where, after stay on discovery was lifted, discovery was limited to any factual disputes challenging adequacy of agency's search for documents and adequacy of the index prepared by agency describing its reasons for withholding any documents, in accordance with federal district court's adoption of DOC's discovery plan, and notwithstanding those limitations, DOC responded to requester's interrogatories within time set by court, and DOC attempted to resolve disputes surrounding production of several DOC employees for deposition. 5 U.S.C.A. § 552.

**[5] Federal Civil Procedure 170A** ☞ **1358**

170A Federal Civil Procedure

　170AX Depositions and Discovery
　　170AX(C) Depositions of Parties and Others Pending Action
　　　170AX(C)2 Proceedings
　　　　170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
　　　　　170Ak1358 k. Order That Deposition Be Not Taken. Most Cited Cases
**Federal Civil Procedure 170A** ☞ **1363**

170A Federal Civil Procedure

　170AX Depositions and Discovery
　　170AX(C) Depositions of Parties and Others Pending Action
　　　170AX(C)2 Proceedings
　　　　170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
　　　　　170Ak1363 k. Privileged Matters in General. Most Cited Cases
Federal district court's protective orders preventing depositions of three Department of Commerce (DOC) employees were appropriate in Freedom of Information Act (FOIA) case, even though requester argued that the employees had knowledge relating to his claim, where

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.)))

requester sought to depose them regarding the deliberative process, attorney-client privileged communications, and attorney work product, which were all areas that were specifically exempted from disclosure under FOIA. 5 U.S.C.A. § 552.

**\*172** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-02-415-A).Daniel E. Heily, Appellant Pro Se. Francis Patrick King, Office of the United States Attorney, Alexandria, Virginia, for Appellee.

**\*173** Before WIDENER and NIEMEYER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished PER CURIAM opinion.

### OPINION

PER CURIAM:

**\*\*1** Daniel E. Heily brought this action against the Department of Commerce ("DOC") challenging its withholding of certain documents pursuant to his request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). The district court granted the DOC's motion for summary judgment, and Heily appeals. We affirm.

On review of a district court's grant of summary judgment in favor of the government in a FOIA action, we must determine de novo whether, after taking the evidence in the light most favorable to the nonmovant, there remains any genuine issue of material fact and whether the government is entitled to summary judgment as a matter of law. *See Ethyl Corp. v. United States Envtl. Prot. Agency,* 25 F.3d 1241, 1246 (4th Cir.1994).

Heily argues that: (1) the district court erred by granting summary judgment in favor of the DOC because triable issues of fact remain at issue; (2) the DOC was permitted to paralyze discovery; (3) the scope of discovery was limited in conflict with FOIA; and (4) the district court issued inappropriate protective orders. For the reasons that follow, we find that Heily's arguments fail.

FOIA requires federal agencies to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions listed in § 552(b). A defendant agency has the burden of establishing the adequacy of its search and that any identifiable document has either been produced or is subject to withholding under an exemption. *See Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir.1994). This burden may be met through affidavits explaining the manner in which the search was conducted. *See id.* An agency's affidavits must be relatively detailed and nonconclusory in order to support a FOIA exemption. *See Simmons v. United States Dep't of Justice,* 796 F.2d 708 (4th Cir.1986); *see also National Parks & Conservation Ass'n v. Kleppe,* 547 F.2d 673, 680 (D.C.Cir.1976) (holding that conclusory and generalized allegations are unacceptable as means of sustaining the burden of nondisclosure). The court is entitled to accept the credibility of such affidavits, so long as it has no reason to question the good faith of the agency. *See Bowers v. United States Dep't of Justice,* 930 F.2d 350, 357 (4th Cir.1991); *see also Carney,* 19 F.3d at 812 (holding that such affidavits are accorded a presumption of good faith). To prevail over this presumption, a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith. *See Miller v. United States Dep't of State,* 779 F.2d 1378, 1384 (8th Cir.1985). When deciding whether these burdens have been met, the district court must consider everything in the light most favorable to the nonmoving party.

[1] In the present case, the district court did not err by granting the DOC's motion for summary judgment as to Heily's FOIA requests. The DOC provided an affidavit from Brenda Dolon, the Departmental Freedom of Information Officer, listing the documents sought by Heily, a description of the search conducted by the DOC, the documents released to Heily, and an extensive explanation of the reasons certain documents were withheld. A **\*174** *Vaughn*[FN1] index prepared by the DOC also was attached to the affidavit. We find that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.)))

the affidavit produced by the DOC outlines its more than adequate search for responsive documents, and outlines, in detail, its reasons for withholding certain documents or portions thereof. Thus, the DOC met its burden of showing that it performed an adequate search and that any identifiable document was either produced or was subject to withholding under an exemption. *See Carney,* 19 F.3d at 812.

FN* *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973).

**2 [2] Moreover, Heily fails to provide any evidence to rebut the affidavit. Although he seems to believe that there are other documents that he is entitled to, this belief, standing alone, is inadequate to withstand a motion for summary judgment. *See Marks v. United States,* 578 F.2d 261, 264 (9th Cir.1978) (stating that conclusory allegation that files must exist without further support does not raise genuine issue for trial); Fed.R.Civ.P. 56(e) (requiring that affidavits in opposition to motions for summary judgment be based on first-hand knowledge). Thus, we find that the district court did not err by granting summary judgment in favor of the DOC.

[3] We also disagree with Heily's arguments that the DOC was allowed to paralyze discovery, and that the scope of discovery was limited in conflict with FOIA. It is well-established that discovery may be greatly restricted in FOIA cases. *See Simmons,* 796 F.2d at 712 (holding that district court has discretion to limit discovery in FOIA cases and to enter summary judgment on basis of agency affidavits in proper case). When the courts have permitted discovery in FOIA cases, it generally is limited to the scope of the agency's search and its indexing and classification procedures. *See Weisberg v. United States Dep't of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980); *see also Public Citizen Health Research Group v. Food & Drug Admin.,* 997 F.Supp. 56, 72 (D.D.C.1998) (holding that discovery is limited to investigating the scope of agency's search for responsive documents, the agency's indexing, and the like).

[4] In the present case, after the stay on discovery was lifted, discovery was limited to any factual disputes challenging the adequacy of the agency's search for documents and the adequacy of the index prepared by the agency describing its reasons for withholding any documents, in accordance with the district court's adoption of the DOC's discovery plan. Notwithstanding these limitations, the DOC responded to Heily's interrogatories within the time set by the district court. Also, the DOC attempted to resolve the disputes surrounding production of several DOC employees for deposition. Thus, we find no evidence to substantiate Heily's contention that the DOC paralyzed discovery. Instead, the record reveals that it acted properly within the rules of discovery and the specific boundaries set by the district court.

[5] Lastly, Heily argues that the district court issued inappropriate protective orders. We find that this argument also fails. Although the district court authorized up to three non-party witness depositions, the district court entered protective orders preventing the depositions of three DOC employees. Heily argues that these employees have knowledge relating to his claim and should, therefore, be allowed to be deposed. Even assuming that these individuals do have relevant information, the record reveals that Heily sought to depose them regarding the deliberative process, attorney-client privileged communications,*175 and attorney work product. Thus, because these are all areas that are specifically exempted from disclosure under FOIA, we find that the district court's protective orders preventing such depositions are appropriate.

**3 Accordingly, we affirm the district court's grant of summary judgment in favor of the DOC. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED.*

C.A.4 (Va.),2003.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.)))

Heily v. U.S. Dept. of Commerce
69 Fed.Appx. 171, 2003 WL 21513059 (C.A.4 (Va.))
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.